UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-80479-CIV-MIDDLEBROOKS/BRANNON

MICHAEL RASKIN

            *Plaintiff*,

            v.

NORMAN L. STONE

            *Defendant*.

## DECLARATION OF ROBERT H. BARON

I, Robert H. Baron, declare pursuant to 28 U.S.C. § 1746 that:

    1.    I am a member of the bar of the State of New York and a partner of the firm of Cravath, Swaine & Moore LLP.  I have been admitted *pro hac vice* as an attorney for the Defendant in this action, Norman L. Stone ("Stone").  I have personal knowledge of the following facts.

    2.    On April 27, 2012, the Stone 2003 Grandchildren Trust (the "Trust"), for which Norman Stone acts as representative, filed an action in the Delaware Court of Chancery (the "Delaware Action").  The Trust sought a declaration on the narrow issue of the membership and control of GC Distribution Systems, LLC ("GC Distribution"), a Delaware LLC.  Prior to the disputes that precipitated the Delaware Action, Raskin and the Trust each owned fifty percent of GC Distribution.

    3.    Michael Raskin ("Raskin") has filed counterclaims in the Delaware Action alleging, *inter alia*, that the Trust breached the Limited Liability Company Agreement for GC Distribution and breached its fiduciary duty by engaging in competition with GC Distribution.

1

4. On May 2, 2012, Raskin filed this action in the Southern District of Florida, seeking declaratory relief and alleging, *inter alia*, breach of an oral agreement between Stone and Raskin to convey an equity interest in two Hong Kong companies, Tru Woods Ltd. and Vertex Services, Ltd.

5. On June 4, 2012, Stone filed a motion to dismiss this action for improper venue, or in the alternative, to transfer the action to the District of Connecticut or the Southern District of New York (the "Venue Motion").

6. On June 14, 2012, my partner, Keith Hummel, who has also been admitted *pro hac vice* as an attorney for Stone in this action, confirmed Stone's statement in his declaration supporting the Venue Motion that he is domiciled in New York by providing to Mr. Ivers a copy of Stone's amended 2011 New York State Resident Income Tax Return.

7. On June 20, 2012, Mr. Hummel spoke with Mr. Ivers by telephone and consented to Mr Ivers' request for an eight-day extension of time, from June 21 to June 29, to respond to the Venue Motion. Mr. Hummel consented to this request both as a matter of professional courtesy and because the parties were involved in discussions to resolve the issues raised in the Venue Motion. Mr. Hummel, however, informed Mr. Ivers that Stone would not agree to a further extension of time for Raskin to respond. The Court granted Raskin's motion for an extension until June 29.

8. On June 27, 2012, in response to Mr. Ivers' request, Mr. Hummel provided to Mr. Ivers a copy of Stone's original 2011 New York State Resident Income Tax Return. The only information in Mr. Stone's tax returns that is relevant to the Venue Motion – Mr. Stone's state of residence – is the same in the original and amended returns. In his transmittal email to Mr. Ivers, Mr. Hummel stated:

> At this point, I believe Mr. Raskin has no other choice other than to dismiss his case or consent to a transfer. Indeed, we do not believe that Mr. Raskin had a Rule 11 basis to file this lawsuit in Florida in the first place. Mr. Stone reserves all his rights to move for sanctions or costs.

9.  In the morning of June 28, 2012, beginning at approximately 10:30 a.m., Mr. Hummel and I spoke with Raskin's counsel, Mr. Ivers, by telephone. During that call, we reached agreement with Mr. Ivers to transfer this action to the District of Connecticut. We then discussed the mechanics of implementing that agreement and effecting the transfer of the action to Connecticut. Mr. Ivers stated that he was in the process of moving his office, that he would therefore need additional time to finalize the transfer stipulation and that he would like us to consent to extend the time for him to file a response to the Venue Motion, which was due the following day. In light of the agreement on the transfer to Connecticut and the circumstances described by Mr. Ivers, as well as the upcoming July 4th holidays, we agreed that it would make sense to allow sufficient time to complete the papers to effect the transfer, and Mr. Hummel consented to a second extension of time to respond to the Venue Motion, to July 10. Mr. Hummel also informed Mr. Ivers during that telephone conference that Mr. Hummel would be flying to Europe the next day for his wedding and honeymoon, and that in Mr. Hummel's absence, Mr. Ivers should coordinate with me regarding the transfer papers. Following the telephone conference, Raskin filed a motion for an extension of his time to respond to the Venue Motion, with Stone's consent, and the Court granted the motion, extending the time for Raskin to respond until July 10.

10. On June 29, 2012, Raskin filed an application for a Temporary Restraining Order in the Delaware Action. Raskin's counsel did not provide Mr. Hummel or me with any notice of this filing, nor did he communicate with Mr. Hummel or me at all until the evening of July 9, 2012.

11. On July 9, 2012, at 7:53 p.m., Raskin's counsel, Mr. Ivers, emailed Mr. Hummel, requesting consent to a third extension of time to respond to the Venue Motion. Mr. Hummel, who was still on his honeymoon, forwarded Mr. Ivers' email to me. I responded in the morning of July 10, at 10:46 a.m., with an email to Mr. Ivers, informing him that Stone would not consent to Raskin's request for a third extension of time, in light of Stone's having consented to two prior extensions of Raskin's time to respond to the Venue Motion, the second of which was based on the agreement we had reached on June 28 to transfer this action to Connecticut, and in light of Mr. Ivers having then denied in the Delaware Chancery Court the existence of the agreement that we had reached on June 28 to transfer this action. I reiterated Stone's willingness to resolve the Venue Motion on the basis previously agreed, with a transfer of the action to the District of Connecticut, and sent to Mr. Ivers a draft Joint Notice of Consent to Transfer and a proposed transfer order for submission to this Court. Later on July 10, Raskin filed his Motion seeking a third extension of time to respond to the Venue Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 23, 2012

_____
Robert H. Baron